UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.  Case No. 1:17-po-39-GRJ

MURIEL NEWMAN

## **MEMORANDUM DECISION**

This case was tried before the Court on October 4, 2017. Pursuant to Rules 23(c) and 58 of the Federal Rules of Criminal Procedure the following constitutes the Court's findings of fact and decision.

The Defendant is charged with disorderly conduct in violation of 38 C.F.R. §§ 1.218(a)(5) and (b)(11). ECF No. 13.[1] The offense is a class B misdemeanor that carries a maximum penalty of six months imprisonment, a fine of up to $5,000.00, and a $10.00 special monetary assessment. Defendant was represented by James E. Felman and Brandon K. Breslow of Kynes, Markman & Felman, P.A. The government was represented by Jason S. Beaton, Assistant United States Attorney for the Northern District

---

[1]The citation was amended to reflect both the substantive charge (38 C.F. R. § 1.218(a)(5)) and the applicable penalty provision of the code of federal regulations. (§ 1.218(b)(11). The violation notice also was amended to reference an amended statement of probable cause. The Court granted the government permission to amend the violation notice. ECF No. 15.

of Florida.

This case is not the typical disorderly conduct charge frequently cited at the Malcolm Randall VA Medical Center ("VAMC") in Gainesville, Florida. The typical violation notices issued at the VAMC usually involve unruly patients and family members, who disturb the operations of the VAMC while they are there for treatment. This case instead involves the actions of the President of an employee labor union located at the VAMC during an investigative hearing conducted by an administrative investigation board. While the context within which the cited conduct occurred is much different from the normal case, the same provisions of the Code of Federal Regulations and the same legal principles apply to the violation in this case.

Ms. Newman is the President of Local 2779 American Federation of Government Employees (AFGE") at the VAMC. Ms. Newman has been President of AFGE since 2012. As part of her responsibility for overseeing the affairs of the local union, Ms. Newman is responsible for representing bargaining unit employees in investigative hearings conducted by the administrative investigation board ("AIB"). Ms. Newman represents bargaining unit employees in AIB hearings because as union President she

has a responsibility to protect the right of bargaining unit employees to fair representation under the union's collective bargaining agreement with the VA.

The events which led to the issuance of the disorderly conduct citation in this case revolves around what happened during an AIB hearing on March 2, 2017 at the VAMC. A VAMC employee, Samya Semaan-Heart, was supposed to testify at 12:30 PM before the AIB. Ms. Semaan-Heart contacted Ms. Newman by text before the hearing and requested that Ms. Newman represent her. Ms. Newman testified that she believed Ms. Semaan-Heart was a bargaining unit employee entitled to representation at the AIB hearing.

During the bench trial there was a fair amount of testimonial and documentary evidence offered by the parties concerning whether Ms. Semaan-Heart was or was not a bargaining unit employee entitled to union representation. Ms. Newman believed she was because Ms. Semaan-Heart's name was on a list provided in 2016 of the VAMC bargaining unit employees. The AIB members believed otherwise. The difference in views as to whether Ms. Semaan-Heart was a bargaining unit employee led to the confrontation in this case. Although the evidence presented at trial

strongly suggests that Ms. Semaan-Heart was not a bargaining unit employee at the time of the AIB hearing the Court need not resolve this issue because regardless of whether Ms. Newman was entitled to represent Ms. Semaan-Heart at the AIB hearing the case turns upon whether or not Ms. Newman's conduct at the AIB hearing, and thereafter, was sufficient to constitute disorderly conduct under 38 C.F. R. § 1.218(a)(5). While the Court does not condone Ms. Newman's confrontational conduct and use of profanity in the AIB hearing room the Court, nonetheless, reluctantly concludes that the government failed to establish beyond a reasonable doubt that Ms. Newman's conduct violated the applicable disorderly conduct provision in the Code of Federal Regulations. Here's why.

The starting point of course is the applicable regulation. Title 38 C.F.R. § 1.218(a)(5) provides, in pertinent part:

> Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited.

This section must be read in conjunction with section 1.218(a)(5), the penalty provision cited in the original violation notice, to determine the essential elements of disorderly conduct. *United States v. Renfro,* No. 1:15-cr-8-MW, ECF No. 17 (N.D. Fla. June 29, 2016), *aff'd* 702 Fed. Appx. 799 (11th Cir. 2017). The government is required to prove a person "created loud, boisterous, and unusual noise that would tend to ... disturb the normal operation of a VA facility." *Id. See also, United States v. Agront,* 773 F. 3d 192, 197 (9th Cir. 2014).

The Eleventh Circuit has held that in order to support a conviction for disorderly conduct on Government property, "the record must demonstrate how the defendant's behavior caused a disruption." *U.S. v. Shepard,* 2010 WL 200841, at *5 (11th Cir. 2010)(citing *Johnson v. U. S.*, 394 F.2d 984 (5th Cir.1968)).[2] "In addition, at least one of our sister circuits has concluded that it is appropriate to focus on the extent to which the defendant impeded a government employee in the performance of his official duties." *Shepard,* 2010 WL 200841 *5 (citing *U. S. v. Schembari*, 484 F.2d 931, 933, 936-37 (4th Cir.1973) (holding that the defendant's conduct, which included forcibly breaking through a line of police officers

---

[2] Pursuant to 11th Cir. Rule 36-2, unpublished opinions are not binding precedent but may be cited as persuasive authority.

charged with forming a protective barrier between protesters and the Pentagon, provided a sufficient basis for a guilty verdict)). The focus of the violation in this case, therefore, is upon whether the conduct disturbed or tended to disturb the normal operations of the VAMC.

The evidence the government presented established beyond a reasonable doubt that Ms. Newman was loud, boisterous and used profanity in the AIB hearing room. Although during her testimony Ms. Newman attempted to downplay the level of her voice and the words used when she entered the AIB hearing room—and was then told she had no right to represent Ms. Semaan-Heart because Ms. Semann-Heart was not a bargaining unit employee—Ms. Newman never denied using profanity. The AIB members—including Dr. Lawrence Hood, Phillip Pitts and Denise Levasseur, the Chair of the AIB—testified consistently and credibly that Ms. Newman was boisterous, loud and used profane language directed at the AIB members. The profane language included calling Ms. Levassuer a "fucking bitch," and telling Mr. Pitts to "shut the fuck up." If the use of profane language was all that was required the Court would have no trouble finding that Ms. Newman was guilty of disorderly conduct. But the regulation requires more.

The government must show that the conduct disrupted the normal operations of the VA. The government attempted to establish that Ms. Newman's conduct disrupted the VA's operations by arguing that Ms. Newman's conduct disrupted the AIB hearing, which is itself part of the operations of the VA. The government also points to Ms. Newman's conduct when she returned to her office in the trailer after the incident in the AIB hearing room in an effort to show Ms. Newman's conduct was sufficient to constitute disorderly conduct. Notably, the government did not attempt to establish that Ms. Newman's conduct disturbed other employees or patients who were located in adjacent areas or in the hallway outside of the AIB hearing room.[3]

---

[3] The government did not charge Ms. Newman with disrupting patient care nor did the government submit any evidence that patient care was impacted by Ms. Newman's conduct. And while there was testimony (from Dr. Hood) that a person would have been able to hear Ms. Newman's loud voice and profanity outside the hearing room—and that the hallway outside of the AIB hearing room was used by patients, employees and family members—there was no evidence offered that any patients, employees or family members were outside of the AIB hearing room or that anyone else in the proximity to the AIB hearing room was actually disturbed or the normal operations of the VA in adjacent areas to the AIB hearing room were disturbed in any way. Had the government offered evidence that patients or medical personnel were disturbed so that the ability to do their jobs was adversely impacted the government might have been able to prove its case. But the government either chose not to present this evidence (or did have any evidence) and instead chose to focus solely upon the effect of Ms. Newman's conduct on the AIB hearing.

While the parties disagree about the details of the events that occurred at the AIB hearing on March 2, 2017, there is not much variation between the parties concerning the material events at the hearing.

The evidence established that Ms. Newman arrived at the hearing room with Ms. Semaan-Heart around 12:30 PM for the interview. Upon her arrival Ms. Lavesseur, chair of the AIB, advised Ms. Newman that she was not entitled to be present because Ms. Semaan-Heart was not a bargaining unit employee. When Ms. Newman vigorously disputed whether Ms. Semaan-Heart was a bargaining unit employee, Ms. Newman and Ms. Semaan-Heart were asked to leave the hearing room while Ms. Levasseur contacted human resources. After waiting five to ten minutes outside of the hearing room Ms. Newman and Ms. Semaan-Heart were invited back into the hearing room. It was at this point that the confrontation escalated.

Ms. Newman vigorously asserted she had a right to be present as a union representative. Ms. Levasseur told Ms. Newman that she did not and directed in a loud voice for Ms. Newman to leave the hearing room. Ms. Newman yelled back at Ms. Levesseur that Ms. Newman had a right to be present. During this exchange Ms. Newman used a loud voice and directed several expletives at the AIB Board members. When Ms. Newman

continued to argue with Ms. Levesseur, Ms. Levesseur threatened to call the VA police to remove Ms. Newman. At that point Ms. Newman, who was angry and agitated, reluctantly left the hearing room. Ms. Newman then returned to her office located in the T3 trailer, a location outside the main hospital building.

After Ms, Newman left the hearing room, the AIB went forward with Ms. Semaan-Heart's interview. The interview began at 12:40 PM and concluded at 12:47 PM. Notably, the interview slot for Ms. Semaan-Heart was scheduled until 12:50 PM and therefore was concluded well within the time slotted for the interview. The next interview was scheduled for 1:00 PM, which began as scheduled.

According to the government, the disruption of the AIB hearing by Ms. Newman's conduct is sufficient to establish that Ms. Newman "disrupted the operations of the VA." Ms. Levesseur testified that because of the ten minute delay in beginning the interview of Ms. Semaan-Heart Ms. Levessur was required to cut questions from her interview. While the Court does not doubt that Ms. Levesseur may have abbreviated her questioning in some manner, the Court finds that whatever questions Ms. Levessur says she did not ask could not have been material because the

9

interview ended several minutes before the scheduled end time for the interview. Furthermore, there was an additional ten minutes slotted between Ms. Semaan-Heart's interview and the interview scheduled to begin at 1:00 PM, which would have been more than sufficient time if the AIB had elected to use the entire twenty minutes allocated for Ms. Semann-Heart's interview. Although Ms. Levesseur testified that ten minutes are scheduled between interviews to review the testimony to determine whether the AIB needed to add or edit questions, and to take care of personal needs, there was no testimony that based upon Ms. Semaan-Heart's seven minute interview any matters were discussed which arguably required discussion or editing for future questions. Nor was there any testimony that the AIB members were rushed or unable to carry out their responsibilities in the investigation because Ms. Semaan-Heart's interview began ten minutes after it was scheduled to start.

     The government argues that the ten minute delay in beginning Ms. Semaan-Heart's interview caused by Ms. Newman's loud and confrontational conduct and use of profanity-laced language directed at the AIB board is sufficient to establish a violation of section 1.218(a)(5). The Court disagrees. In the absence of any evidence that the confrontation with

10

Ms. Newman impacted the interview schedule or the ability of the AIB to remain on track in its investigation, the Court finds there is insufficient evidence to establish that Ms. Newman's conduct disrupted the normal operations of the VA. While admittedly there was a ten minute delay in beginning Ms. Newman's interview the interview was completed before the expiration of the allotted time so the short delay on the front end had no impact upon the further interviews and thus did not disrupt the ability of the AIB to conduct and complete its investigation.

Although Ms. Levesseur testified that the confrontation with Ms. Newman caused her to cut her questioning short the Court finds the evidence suggests otherwise. The evidence is undisputed that there was time remaining in the slot for Ms. Semaan-Heart's interview, which the AIB board did not utilize. Moreover, there was additional time between the 12:50 scheduled end to the interview and the next interview, which the AIB board did not utilize for further questioning of Ms. Semaan-Heart. Lastly, there was no evidence offered by the government concerning any questions or subject matter area of questioning that the AIB intended to pursue with Ms. Semaan-Heart, which the AIB was unable to pursue because the interview started ten minutes late.

Accordingly, for these reasons the Court finds that while Ms. Newman's conduct was far from appropriate and her use of profanity was highly unprofessional Ms. Newman's conduct did not cause the disruption of the normal operations of the AIB within the meaning of section 1.218(a)(5).

The government also argues that Ms. Newman violated section 1.218(a)(5) after she left the AIB hearing and returned to her office in the T3 trailer. When Ms. Newman returned to the union trailer, David Watson, a VA employee, called the VA police about a disturbance. Apparently what Mr. Watson heard was Ms. Newman's outburst in her office about what had occurred at the AIB hearing. Admittedly, Ms. Newman was upset. Major Dean Wine and Officer Richard Stephens responded to the call. When Major Wine arrived Ms. Newman was in her office behind the closed door to her office. According to Major Wine, Ms. Newman was loud and upset. When Major Wine made contact with Ms. Newman to see if she was alright Ms. Newman told Major Wine through the door to "fuck off." Major Wine remained in the trailer for about five minutes while Ms. Newman calmed down. He then left.

The fact that VA police had to respond to the T3 trailer because Ms.

Newman was upset is insufficient to establish that Ms. Newman disrupted the operations of the VA. Mr. Watson did not testify and there is no evidence that Ms. Newman's outburst in her office caused a disruption in the ability of Mr. Watson to do his job. And although Major Wine testified that when he arrived at the trailer he noticed that a couple of people from the offices down the hall had come out, there was no evidence that any of these individuals were impacted in anyway in performing their jobs at the VA.

Thus, in the absence of any evidence that the operations of the VA were disrupted Ms. Newman's loud display of anger and frustration in her office behind a closed door is woefully insufficient to establish that Ms. Newman violated section 1.218(a)(5). Although the evidence established that Ms. Newman again directed expletives at a VA employee engaged in carrying out his duties, Ms. Newman's advice to Major Wine to "fuck off" did not impact his ability to carry out his investigation or his ability to perform his duties as a VA police officer.

The use of profanity in a work place is never appropriate, evidences a lack of respect for others, and is used to bully and intimidate co-workers. But even though the use of profanity is not appropriate in a work setting it

13

is not criminal, and certainly standing alone, is not enough to constitute a violation of section 1.128(a)(5).

Accordingly, for the reasons discussed above, the Court finds that the government has failed to prove beyond a reasonable doubt that Ms. Newman violated 38 C.F. R. § 1.218(a)(5). Ms. Newman therefore is adjudicated not guilty of violating 38 C.F. R. § 1.218(a)(5).

The clerk is directed to enter judgment reflecting that Defendant was found not guilty after a bench trial.

**DONE AND ORDERED** in Gainesville, Florida this 29th day of January 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge